UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RODERICK R. RIGBY                    CIVIL ACTION NO. 13-CV-3252

VERSUS                               JUDGE DOHERTY

COMMISSIONER, SOCIAL SECURITY   MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of April 13, 2012.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the case be affirmed.

## BACKGROUND

Roderick R. Rigby filed applications for disability insurance benefits and

supplemental security income benefits under Titles II and XVI of the Social Security

Act in December 2012, alleging disability beginning in October 2010 due to HIV

infection, diarrhea, night sweats, fatigue, insomnia, spinal derangement, depression,

and painful headaches. [Tr. 128-147].[1]  Consultative examinations were ordered and

performed in January and March 2011.  [Tr. 162-165, 208-211].  On review of those

medical opinions, DDS determined that the claimant's primary diagnosis of

---

[1]       The administrative record and the transcript of the administrative hearing are made
a part of the record at Rec. Doc. 10-1.  Pages are numbered at the bottom right corner, and transcript
references will be made in this document as "Tr. ___."

asymptomatic HIV infection was non-severe, as was his non-exertional mental impairment diagnosis of affective disorder.  [Tr. 48-49].

An administrative hearing was conducted by ALJ Paul A. Heyman on March 9, 2012, in New York.  Mr. Rigby appeared with legal counsel and gave testimony. [Tr. 28-46].  No other witnesses were called.  On April 13, 2012, the ALJ issued a "Partially Favorable" decision, awarding benefits to Mr. Rigby for the time period from October 17, 2010 through March 8, 2012.  [Tr. 9-24].  Mr. Rigby sought review of the decision by the Appeals Council, which refused to overturn the ALJ's decision. [Tr. 1-8].   That refusal makes the ALJ's decision the Commissioner's final administrative decision.   On December 17, 2013, Mr. Rigby filed the instant Complaint in this Court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g).  [Rec. Doc. 1].

## ASSIGNMENT OF ERRORS

The claimant's only assignment of error is that the ALJ improperly applied the Medical-Vocational Guidelines ("the Grids") to deny benefits at step five of the sequential evaluation process and/or the final step of the sequential evaluation process for medical improvement.

## THE STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[2]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[3]  Substantial evidence is more than a mere scintilla and less than a preponderance.[4]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[5]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[6]  The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]  A claimant has the burden of proving his disability.[8]

---

[2]      42 U.S.C. § 405(g); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[3]      *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[4]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[5]      *Boyd v. Apfel,* 239 F.3d at 704.

[6]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[7]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[8]      See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

A claimant seeking Social Security benefits bears the burden of proving that he is disabled.[9]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[11]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four.

---

[9]      *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[10]      42 U.S.C. § 423(d)(1)(A).

[11]      20 C.F.R. § 404.1572.

If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[12]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[13] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[14]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[15]

The claimant bears the burden of proof on the first four steps.[16]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[12]     See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[13]     20 C.F.R. § 404.1520(a)(4).

[14]     20 C.F.R. § 404.1545(a)(1).

[15]     20 C.F.R. § 404.1520(e).

[16]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[17]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[18]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[19]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[20]

In this case, the ALJ found that, although the claimant was disabled for a period of time, his medical condition improved to the extent that, as of a certain date, he was no longer disabled.  [Tr. 20].  When a claimant is found disabled at any point in the evaluative process, the ALJ must also determine if the disability continues through the date of his decision.  In order to find that the claimant's disability does not continue through the date of the decision, the ALJ must show, through a separate multi-step process,[21] that medical improvement has occurred and that the

---

[17]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[18]     *Fraga v. Bowen*, 810 F.2d at 1304.

[19]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[20]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[21]     20 C.F.R. 416.994(b)(5).

improvement is either related to the claimant's ability to work or subject to an exception.[22]   In this context, a medical improvement is a decrease in the medical severity of an impairment, established by improvement in symptoms, signs, or laboratory findings.[23]

At step one of this additional evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a Listing.[24]   At step two, the ALJ must determine whether if medical improvement occurred.  If so, the analysis proceeds to the third step.  If not, the analysis proceeds to the fourth step.  At step three, the ALJ must determine whether the medical improvement is related to the claimant's ability to work.[25]  There is such a correlation if the medical improvement results in an increase in the claimant's capacity to perform basic work activities.  If the medical improvement is related to the ability to work, the analysis proceeds to the fifth step.  If not, the analysis proceeds to the fourth step.  At step four, the ALJ must determine if an

---

[22]     20 C.F.R. 416.994(a).

[23]     20 C.F.R. 416.994(b)(5)(ii).

[24]     20 C.F.R. 416.994(b)(5)(i).

[25]     20 C.F.R. 416.994(b)(5)(iii).

-7-

exception to medical improvement applies.[26]  At step five, the ALJ must determine whether all of the claimant's current impairments in combination are severe.[27]  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next step.  At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform his past relevant work.[28]  If the claimant has the capacity to perform past relevant work, his disability has ended; if not, the analysis proceeds to the last step.  At the last step, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience.[29]  If there is such work, he is no longer disabled.  If there is not, his disability continues.

Thus the final step in both sequential evaluations – step five in the ordinary disability analysis and step seven in the medical improvement analysis – is the same,

---

[26]     20 C.F.R. 416.994(b)(5)(iv).  In this case, there is no allegation that any potential exception is relevant.

[27]     20 C.F.R. 416.994(b)(5)(v).

[28]     20 C.F.R. 416.994(b)(5)(vi).

[29]     20 C.F.R. 416.994(b)(5)(vii).

and it requires the ALJ to determine whether work other than claimant's past relevant work exists that the claimant can still perform.

In this case, the claimant does not dispute the Commissioner's findings at any step other than step five of the original analysis,[30] which correlates to the final step of the medical improvement analysis.

There is no dispute that Mr. Rigby was disabled from October 17, 2010 through March 8, 2012, and there is no dispute that his HIV no longer satisfied a Listing thereafter.  At issue is the ALJ's finding that Mr. Rigby reached medical improvement as of March 9, 2012, sufficient to enable him to perform the full range of unskilled light work from that date forward.  Mr. Rigby argues that the ALJ's decision was reached through the application of improper legal standards.  Specifically, he argues that the ALJ improperly applied the Medical-Vocational Guidelines to deny benefits.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Roderick Rigby was born on October 23, 1964, and is now 50 years old.  [Tr. 100].  He has a high school education with two years of college, holding an associate's degree in culinary arts.  [Tr. 132, 208].  He has no difficulty with hearing,

---

[30]     The claimant's repeated reference to "step five" in his briefing may be confusing because he does not also refer to the final step of the medical improvement analysis.  The claimant's argument is understood, however, as challenging the ALJ's decision at the final step of the medical improvement analysis as well as at step five of the original analysis.

reading, understanding, concentrating, talking, sitting/standing/walking, using his hands, seeing, or writing.  [Tr. 129].  He can speak, read, write, and understand English.  [Tr. 131].  He worked as a cook/chef lead worker for various companies from 1995 to 2010.  [Tr. 133-134].  He has not worked since October 2010 for reasons he associates with a diagnosis of HIV at that time and symptoms related to that diagnosis.  As of his initial application for benefits, Mr. Rigby had not received treatment for any mental condition, and he had not been hospitalized.  [Tr. 135].

Mr. Rigby was examined by internist Dr. Dipti Joshi on January 28, 2011.  [Tr. 162-165].  He gave a history of his HIV diagnosis four months earlier, and he described extensive weight loss and fatigue.  He reported previous treatment for syphilis, herpes, anxiety, and mild depression.  He described back pain and referenced two herniated discs, with intermittent pain with sitting and sleeping.  He described occasional marijuana use.  He indicated that he cooks eight times a week, cleans and does laundry twice a week, shops four times a week, and sees to his personal care without assistance.  He described reading, going to parks and museums, trying to find work, and socializing with friends.

On examination, Mr. Rigby was in no acute distress.  He had a normal gait, and he could walk on heels/toes without difficulty.  He could do a full squat, and had a normal stance.  He used no assistive devices and was able to get on and off the

-10-

examination table and to rise from his chair without difficulty.  Mr. Rigby had full flexion/extension and movement of the cervical spine and lumbar spine.  The straight leg raise test was negative.  No abnormality was noted in the thoracic spine.  He had full range of motion in his shoulders, elbows, arms, and wrists, as well as his hips, knees, and ankles.  His joints were noted to be stable, with some tenderness on palpation in the lumbar region.  Deep tendon reflexes were equal, without sensory deficit or muscle atrophy evident, and strength was 5/5 in all extremities.  Hand/finger dexterity were noted to be intact, with 5/5 grip strength.

Dr. Joshi diagnosed occasional marijuana use, HIV with weight loss and fatigue, anxiety, mild depression, low back pain with mention of herniated discs. Prognosis was noted to be stable.  In a Medical Source Statement, Dr. Joshi indicated that Mr. Rigby should avoid all strenuous exertion in light of his HIV, severe weight loss, and fatigue.  He should avoid working from heights, operating heavy machinery, and driving a motor vehicle in light of his marijuana use, and he should have followup treatment for anxiety and depression.

A psychiatric evaluation was perform by Dr. Edward Hoffman, Ph.D. on March 11, 2011.  [Tr. 208-211].  Dr. Hoffman noted that Mr. Rigby had traveled by public transportation for the appointment.   Mr. Rigby reported that he was seeing a psychiatrist every month, but not a therapist, and was taking psychotropic

medications, but had never been hospitalized for psychiatric illness.  Mr. Rigby denied using street drugs, but admitted to occasional marijuana use.  He described his sleep to be poor, with frequent nightmares.  His appetite was fair, and Mr. Rigby indicated that he liked to cook and go to museums as leisure activities.  He does cooking, laundry, shopping independently, and he has friends and hobbies.  He could independently manage his finances.  He would like to return to college to become a nutritionist.  He was not looking for work due to his health problems.  He described feelings of depression.

The mental status examination revealed a cooperative demeanor and responsiveness to questions, an adequate manner of relating, good eye contact, and an adequate flow of speech and focus of thought processes.  Mr. Rigby was noted to have appropriate and stable mood, a normal range of affect, orientation in three spheres, and adequate attention and concentration, measured by arithmetic questions and general knowledge questions.   There was no evidence of delusions, hallucinations, or disordered thinking.  Dr. Hoffman noted some impaired remote memory skills, an average range of intelligence functioning, adequate arithmetic functioning, and fair insight and judgment.  "Overall he shows adequate adaptive functioning and socialization skills." [Tr. 210].  The diagnosis recorded was Axis I: cannabis abuse with depressive features; II: none; III: two herniated disks, chronic

headaches, and insomnia.  Prognosis was noted to be good.  In a Medical Source Statement, Dr. Hoffman noted "[v]ocationally, the claimant can perform simple and complex tasks.  He can relate adequately to others.  He can make appropriate decisions. He can follow a routine and a schedule independently." [Tr. 210].

*The Administrative Hearing:*

At the claimant's request, a hearing was conducted by ALJ Paul A. Heyman on March 9, 2012.  [Tr. 28-46].  The claimant was represented by counsel, who acknowledged without objection all exhibits in the record and offered additional evidence at the hearing.  The hearing record was also held open for the submission of additional evidence.  [Tr. 30].  Testimony was taken from the claimant, who confirmed that he was living alone in Bronx, New York and had been a New York resident for three years.  He has an associate's degree in culinary arts, and he described himself to be an executive chef, "so I do everything."  [Tr. 32].  His last work was in October 2010, when he ran a cafeteria at a community hospital.  It was a contract position, and when he "lost the bid," he lost the job.  [Tr. 33].  He was diagnosed with HIV in October 2010, the day after he lost his job.  [Tr. 33].  He believes he lost the contract because of symptoms from his medical condition.  [Tr. 40].  He described constant diarrhea and weight loss from "wasting,' which conditions were "somewhat under control" with medications.  [Tr. 35].  He had an

anal abscess four months before the hearing, with residual fissures.  [Tr. 35-36].  He also described a herniated disk and disk protrusions in the lower back, which cause him to have trouble sitting, standing, and maintaining any position for more than half an hour.  He also has trouble sleeping.  [Tr. 36].  More recently, he has been diagnosed with cytomacular degeneration.  [Tr. 34].  Mr. Rigby also takes psychotropic medication for depression (Remeron, Klonopin), and he takes prescription medication for sleep (Ambien). [Tr. 36-37, 44].  He described memory problems which have caused him to not be as on top of things as he used to be.  [Tr. 38]. He also described night sweats.  [Tr. 44].  He is a participant in a voluntary two-year medical research study, and he takes ARBs (Atripla) as part of that study.  His last T-cell count was 800, and his viral count was undetectable.  [Tr. 41-42].

Mr. Rigby testified that he tries to do a two-mile walk a day, broken into four segments, to keep his back and hips limber.  [Tr. 38].  In response to questions by his attorney, he indicated that he uses a car service to get to doctors' appointments, not trusting himself to use public transportation.  He takes hot baths and does light stretching for his back pain, and he wears a brace when he needs it.  He does breathing exercises, yoga, and meditation for pain management, and he takes Vicodin or uses a patch for pain, neither of which is very effective.  He occasionally smokes pot for pain relief.  [Tr. 43-44].

At the close of the claimant's testimony, and in response to questions by the ALJ, Mr. Rigby's attorney confirmed that he alleges that Mr. Rigby's impairments fit Listing 14.08K.  [Tr. 45].  It was agreed that the record would remain open for 20 days for submission of additional documentation, and the ALJ asked for a medical source statement and completion of a HIV questionnaire form (which he provided), and a Form 1501 physical limitations questionnaire.  [Tr. 45-46].

*The ALJ's Determinations:*

The record demonstrates that the ALJ followed the requisite five step sequence in analyzing Mr. Rigby's claims.  He found that the claimant meets the insured status requirements of the Social Security Act through June 30, 2014.  [Tr. 17].  He also found, at step one, that the claimant has not engaged in substantial gainful activity since October 17, 2010.  [Tr. 17].  This finding is supported by the record.  At step two, the ALJ determined that from October 17, 2010 through March 8, 2012, the claimant had the severe impairments of human immunodeficiency virus (HIV) infection with wasting, spinal derangement, a mood disorder, and headaches [Tr. 17], causing more than minimal functional limitations in the claimant's ability to perform basic work activity during the referenced period.  That finding is supported by evidence in the record.  At step three, the ALJ found that during the referenced time period, the claimant's HIV infection with wasting met the criteria of Listing 14.08H.

[Tr. 17].  The ALJ also found that Mr. Rigby was disabled from October 17, 2010 through March 8, 2012, since the severity of his impairments met Listing 14.08H, the listing for HIV infection, during that time period.  [Tr. 17-18].  The ALJ found that the disability period ended on March 8, 2012, based on his related finding from the record that the claimant's HIV infection had not manifested in the resistant secondary infections or other significant symptoms enumerated in the listing after that date.  [Tr. 19].  Considering the evidence and the broad areas of functioning set out under Listing 14.08, the ALJ found that, by March 9, 2012, Mr. Rigby had only mild limitations in activities of daily living and maintaining social functioning, with moderate limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  [Tr. 19-20].

The ALJ found that by the March 9, 2012 date, Mr. Rigby's condition had improved after beginning an anti-retroviral medication regimen.  He had gained back the significant amount of weight he had lost earlier and had returned to his original weight.  As of March 2, 2012, records documented that Mr. Rigby had gained 39 pounds, representing a 33% weight gain.  Therefore, the ALJ found that Mr. Rigby's HIV infection no longer met Listing 14.08H.  [Tr. 20].  The ALJ found that Mr. Rigby's medical improvement as of March 9,2012 is related to his ability to work,

since he no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.  [Tr. 21].

The ALJ also evaluated whether, Mr. Rigby's mental impairments, considered singly and in combination, either met or medically equalled the criteria of Listings 12.04 and 12.09 after March 9, 2012.  He reviewed the "paragraph B" criteria as well as the "paragraph C" criteria [Tr. 19-20], and concluded that Mr. Rigby's mental impairment does not meet or equal a listing.

The ALJ next found, after considering the entire record, that the claimant has the residual functional capacity to perform unskilled light work, with the ability to perform all basic mental work activities, beginning March 9, 2012. [Tr. 21-22].  The RFC finding was reached after considering the claimant's medical record history, the medical opinions, and Mr. Rigby's testimony at the hearing.  [Tr. 23].  On these findings, the ALJ opined that, since March 9,2012, Mr. Rigby has been unable to perform his past relevant work, since the exertional demands of that work exceed the RFC.  [Tr. 23].

Considering the claimant's status as a younger individual with at least a high school education and the ability to communicate in English, the ALJ went on to determine that, beginning on March 9, 2012, transferability of job skills was not material to the disability determination since using the Medical-Vocational Rules as

a framework supports a finding that Mr. Rigby is not disabled whether or not he has transferable job skills.  [Tr. 23].  The ALJ further found that, beginning March 9, 2012, considering Mr. Rigby's age, education, work experience, and RFC, there have been jobs existing in significant numbers in the national economy that he could perform.  Thus, with the RFC to perform the full range of light work, the ALJ opined that a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and 202.00(a) and (b).  Therefore, the ALJ determined that Mr. Rigby's disability ended on March 9, 2012.  [Tr. 23].  The claimant disputes and challenges this finding, arguing that testimony from a vocational expert was required to make the required finding at the last step of both sequential analyses.

*Was Expert Vocational Testimony Necessary?*

In making his findings at the last step of the evaluative process, the ALJ used the Medical-Vocational Guidelines, also known as "the Grids" as a framework. Medical-Vocational Guideline 202.21 provides for a finding of no disability when an individual with a residual functional capacity for light work is aged 45 to 49, has at least a high school education, and has skilled or semi-skilled work experience that is not transferrable.[31]  The claimant is correct when he states that the use of the Medical-Vocational Guidelines is appropriate when it is established that the claimant suffers

---

[31]     *See* 20 C.F.R. Part 404, Subpart P, App. 2.

only from exertional impairments or when the claimant's nonexertional impairments do not significantly affect his residual functional capacity. (Rec. Doc. 13 at 8). The Fifth Circuit has made an almost identical statement, to-wit: "Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity."[32]  In this case, the ALJ expressly found that the claimant is unable to perform his past relevant work solely because of the exertional demands of his past work. "The exertional demands of the claimant's past relevant work exceed the residual functional capacity." (Tr. 23).  In light of this finding, it was appropriate for the ALJ to rely on the Grids.

The claimant suggests that the ALJ failed to address Mr. Rigby's pain complaints or his mental impairment, both of which are nonexertional impairments. But that is not the case.  The ALJ fully evaluated both of those impairments and expressly found that the "additional limitations have little or no effect on the occupational base of unskilled light work." [Tr. 23].  This conclusion was based on substantial evidence in the record.

In particular, the ALJ found that, although Mr. Rigby has a severe mood disorder, he retains the ability to perform all basic mental work activities, including

---

[32]     *Loza v. Apfel*, 219 F.3d 378, 398 (5th Cir. 2000).

-19-

the ability to understand and remember simple instructions, use judgment, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. [Tr. 22]. This finding is supported by substantial evidence in the record, notably the report of the consultative psychologist, Dr. Hoffman.[33]   While Dr. Hoffman acknowledged that Mr. Rigby has psychiatric problems and that he appeared to be depressed, it was Dr. Hoffman's opinion that Mr. Rigby can, in a vocational setting, perform simple and complex tasks, related adequately to others, make appropriate decisions, and follow both a routine and a schedule independently. [Tr. 210].

The ALJ's evaluation of Mr. Rigby's pain complaints is also based upon substantial evidence in the record. Objective testing showed that Mr. Rigby does have degenerative disc disease at L4-L5 and L5-S1 but no disc herniation, spinal stenosis, or foraminal stenosis at L1-L2, L2-L3, or L3-L4; at L4-L5 there is a left foraminal disc herniation without nerve impingement; at L5-S1, there is a left paracentral disc protrusion with some mass effect upon the left S1 nerve root but no spinal canal stenosis. [Tr. 241-242, 246-247]. A CT scan of the head yielded unremarkable results in attempting to diagnose Mr. Rigby's headaches. [Tr. 316]. Both conditions have been treated conservatively, as detailed in the record. The ALJ

---

[33]      Dr. Hoffman's report is in the record at Tr. 208-211.

-20-

took this into account when he concluded that Mr. Rigby no longer has the ability to perform the medium level work that he performed in the past due to the exertional demands of medium work.

The ALJ stated that it was "[t]he exertional demands of the claimant's past relevant work [that] exceed the residual functional capacity" [Tr. 23] and not the claimant's non-exertional complaints, limitations, or impairments that prevent him from being able to perform his past relevant work.  In such a case, the ALJ may rely on the Grids.  As noted by the Commissioner, the mere presence of a nonexertional impairment does not automatically preclude use of the Grids.[34]  When, as in this case, the ALJ rejects the contention that the claimant's nonexertional impairments limit his ability to perform work at a certain level, the guidelines substitute for vocational expert testimony and it is proper for the ALJ to rely upon them without calling upon a vocational expert to testify at the hearing.[35]

## CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the undersigned finds that the Commissioner's decision is based on substantial evidence in the record and was reached following

---

[34]     *Fraga v. Bowen*, 810 F.2d at 1304.

[35]     *Hernandez v. Heckler*, 704 F.2d 857 (5th Cir. 1983).

-21-

application of the appropriate legal standards.  Accordingly, it is recommended that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 10th day of August 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

-22-

DATE:   8/10/2015
BY:       EFA
TO:       RFD

cg